**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Nokota Horse Conservancy, Inc., | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTION FOR TEMPORARY** |
| Plaintiff, | ) | **RESTRAINING ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| David J. Bernhardt, Nokota Horse | ) | Case No. 1:09-cv-024 |
| Association, Inc., David Robson, Nola | ) | |
| Robson, Robert Fjetland, and Deb Fjetland, | ) | |
| | ) | |
| Defendants. | ) | |

_____

Before the Court is the "Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction" filed on October 14, 2009. See Docket No. 41. The Defendants Nokota Horse Association, Inc., David Robson, Nola Robson, Robert Fjetland, and Deb Fjetland, acting pro se, filed a response on October 19, 2009. See Docket No. 44. The Plaintiff filed a reply brief on October 20, 2009. See Docket No. 51. The Plaintiff seeks a temporary restraining order and/or preliminary injunction enjoining and restraining Defendant Nokota Horse Association and its principals and agents, Defendants David Robson, Nola Robson, Robert Fjetland, and Deb Fjetland, from (1) registering or certifying, or offering to register or certify, any horse, including those sold at the October 23, 2009 roundup sale, using the marks NOKOTA or any variation thereof that is confusingly similar to Nokota or the Nokota Horse Conservancy; (2) taking any action that would promote, advertise, or facilitate the registration or certification of horses, including those sold at the roundup sale, using the same marks; and (3) making any use of the same marks in association with any promotion, advertisement, display, sale, offering for sale, printing, production, circulation, or distribution of any product or service associated with the roundup sale of horses. For the reasons set forth below, the Plaintiff's motion for a temporary restraining order is granted.

**I.      BACKGROUND**

The plaintiff, Nokota Horse Conservancy, Inc. (Conservancy), is a non-profit North Dakota corporation with its principal place of business in Linton, North Dakota.  Defendant David Bernhardt is a resident of Wishek, North Dakota.  Defendant Nokota Horse Association, Inc. (Association) is a Minnesota corporation, with its principal place of business in Hayfield, Minnesota. Defendants David Robson and Nola Robson are residents of Hayfield, Minnesota.  Defendants Robert Fjetland and Deb Fjetland are residents of Welch, Minnesota.

The Conservancy was formed in 1999.  The primary purpose of the Conservancy is to preserve the Nokota horse, a unique breed that descended from horses in the Theodore Roosevelt National Park.  The Conservancy maintains a breed registry and registers Nokota horses that meet the Conservancy's registration criteria.  Bernhardt used to be in the business of Nokota horse breeding and stud services, and was once a member of the Conservancy's board of directors.

On August 10, 2004, Bernhardt received a federal trademark registration for the mark "NOKOTA" for horse breeding and stud services.  See Docket No. 21-2.  In August 2008 and January 2009, the Conservancy sent Bernhardt requests that Bernhardt assign the trademark to the Conservancy.  Bernhardt did not respond to the requests.  On April 16, 2009, Bernhardt assigned the trademark to the Association.  See Docket No. 21-3.

On May 1, 2009, the Conservancy filed a complaint alleging trademark infringement, unfair competition, false designation of origin, and fraud on the U.S. Patent and Trademark Office under federal law.  See Docket No. 1.  The complaint further claims trademark infringement and unfair competition in violation of the common law of North Dakota.  On July 8, 2009, Bernhardt filed a counterclaim which alleges trademark infringement and false designation under federal law and

service mark infringement, unfair competition, and consumer fraud under state law.  See Docket No. 10.  On October 14, 2009, the Conservancy filed an amended complaint that added the Association, the Robsons, and the Fjetlands as co-defendants.  See Docket No. 39.

A roundup of horses at the Theodore Roosevelt National Park is scheduled for October 19-20, 2009.  Following the roundup, approximately 90 horses will be made available for sale to the public on October 23, 2009 in Dickinson, North Dakota.  The Conservancy contends that Association representatives have let it be known that prospective buyers may pay to register Nokota horses with the Association.  The Conservancy further contends that the Association would sell Nokota registrations to all horses coming out of the Theodore Roosevelt National Park, regardless of bloodline, which would include horses that would not meet the standards required for Conservancy registration.  The Conservancy moves for a temporary restraining order and/or preliminary injunction enjoining and restraining the Defendants from using the Nokota mark in any way, including at the roundup sale.

The Association, the Robsons, and the Fjetlands argue that North Dakota is an improper venue.  They further contend that the Conservancy's motion for temporary restraining order and/or preliminary injunction should be denied because the Association's registry is not in competition with the Conservancy's registry, that the Conservancy does not own the mark "NOKOTA," and that the Conservancy has not suffered loss and will not suffer loss other than as a result of the Conservancy's own doing.

**II.    VENUE**

The Association, the Robsons, and the Fjetlands contend that the Conservancy's motion for temporary restraining order and/or preliminary injunction should be dismissed for failure to file in the proper venue. 28 U.S.C. § 1391(b) provides that, in actions where federal jurisdiction is based at least in part on a federal question, venue is proper in the federal district where a substantial part of the events or omissions giving rise to the claim occurred. "A substantial part of the events leading to infringement occurs both in the district where the infringer is located and in the district where the trademark owner is located and confusion is likely to occur." Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc., 943 F. Supp. 1117, 1125 (D. Minn. 1996).

The alleged infringers are located in North Dakota and Minnesota. The Conservancy claims ownership of the mark "NOKOTA," while the Defendants argue that NOKOTA is too generic a term to be trademarked and that the Association currently has the federal registration on the mark "NOKOTA." The Association plans to attend and solicit its registry at the roundup sale in North Dakota which will likely cause confusion. Additionally, the Robsons and the Fjetlands have previously purchased Nokota horses in North Dakota. See Docket Nos. 45, 46, 47 and 48. At this preliminary stage of the proceedings, the Court finds that venue is proper in federal district court in North Dakota.

**III.   LEGAL DISCUSSION**

Pursuant to Rule 65(b), in determining whether a temporary restraining order should be granted, the Court must look to the specific facts shown by an affidavit to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. It is well-established

that applications for preliminary injunctions and temporary restraining orders are generally measured against the same factors. Wachovia Sec., L.L.C. v. Stanton, 571 F. Supp. 2d 1014, 1031 (N.D. Iowa 2008). In determining whether preliminary injunctive relief should be granted, the Court is required to consider the factors set forth in Dataphase Sys., Inc., v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). Whether a preliminary injunction or temporary restraining order should be granted involves consideration of "(1) the movant's probability or likelihood of success on the merits, (2) the threat of irreparable harm or injury to the movant absent the injunction, (3) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (4) the public interest." Wachovia Sec., L.L.C., 571 F. Supp. 2d at 1032 (citing Dataphase Sys., Inc., 640 F.2d at 114).

It is well-established that the burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994) (citing Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989) (en banc)). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Elec. Coop., Inc., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987); Dataphase Sys., Inc., 640 F.2d at 114)).

### A. **PROBABILITY OF SUCCESS ON THE MERITS**

When evaluating a movant's likelihood of success on the merits the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are

determined.'" Calvin Klein Cosmetics Corp., 815 F.2d at 503 (quoting Dataphase Sys., Inc., 640 F.2d at 113).  At this preliminary stage, the court does not decide whether the party seeking the temporary restraining order will ultimately win.  PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007).  Although a temporary restraining order cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'" Id. (quoting Dataphase Sys., Inc., 640 F.2d at 113).  The Eighth Circuit has held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant."  S&M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

The Conservancy seeks relief under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq, as amended (Lanham Act), as well as related state law claims of unfair competition and tortious interference with business relations.  The Conservancy contends that it is likely to prevail on the merits of its trademark infringement claims because it is the owner and senior user of the NOKOTA mark and has established and maintained its Nokota breed registry for many years.

Trademark infringement claims include the prerequisite "that the defendant 'use in commerce' the protected mark or a colorable imitation thereof."  DaimlerChrysler AG v. Bloom, 315 F.3d 932, 936 (8th Cir. 2003) (citing Holiday Inns, Inc. v. 800 Reservation, Inc., 86 F.3d 619, 626 (6th Cir. 1996) ("[T]he defendants' use of a protected mark or their use of a misleading representation is a prerequisite to the finding of a Lanham Act violation.").  Once this preliminary hurdle is cleared, in order to prevail on a trademark infringement claim, a plaintiff must prove a likelihood of consumer confusion which is the "hallmark of any trademark infringement claim."

Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1308 (8th Cir. 1997) (quoting Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 80 (2d Cir. 1994)).

The Conservancy does not claim that it possesses a federal registered trademark, but instead must rely on the existence of a common-law trademark in bringing this lawsuit. Bernhardt actually acquired, and the Association now possesses, a federal registered trademark for the NOKOTA mark. Registration of the mark establishes "prima facie evidence of a valid trademark" and provides "nationwide constructive notice of that mark." First Bank v. First Bank Sys., Inc., 84 F.3d 1040, 1044 (8th Cir. 1996). Therefore, the Conservancy can only prohibit the use of the mark, or any colorable imitation, in its market area if it meets three requirements:

> First, [the Conservancy] must prove that it had a common-law trademark in [NOKOTA] antedating registration of [Bernhardt's and now the Association's] mark. Second, [the Conservancy] must prove that its common-law mark is similar enough to [the Association's] mark to create a substantial likelihood of confusion among consumers. Third, [the Conservancy] must demonstrate that the court's exercise of equitable power is appropriate.

Id. (internal citations omitted).

The Conservancy was using the term "Nokota" in connection with breed registration prior to Bernhardt obtaining his federal registration. The Conservancy was formed in 1999 and Bernhardt received the trademark for NOKOTA in 2004. The Association was assigned the mark in April 2009 and has now begun to sell registrations using the NOKOTA mark. See Docket No. 42-3. Bernhardt's trademark was for horse breeding and stud services, while the Conservancy claims its trademark on the term is for its Nokota breed registry. The Conservancy was using the term "Nokota" before the Association came into existence and before the Association began using the "Nokota" term as part of a breed registry. According to the Conservancy, nearly 1300 horses have been registered with the Conservancy. The Court finds that at this preliminary stage of the litigation,

7

and based on the limited information in the record, the Conservancy has established that it has a valid protectable trademark and that the Association is using the Conservancy's protected mark in commerce. As a result, the Court finds that the Conservancy has satisfied the prerequisite to a trademark infringement claim.

The Conservancy must also establish a showing of consumer confusion which is the hallmark of any trademark infringement claim. In determining whether a likelihood of confusion exists, a court should take the following factors into consideration: (1) the strength of the mark; (2) the similarity between the marks; (3) the competitive proximity of the products; (4) the intent of the alleged infringer to pass off its goods as those of the trademark holder; (5) the incidents of actual confusion; and (6) the degree of care likely to be exercised by potential customers. Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1308 (8th Cir. 1997). No single factor is dispositive. SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir 1980).

The Conservancy discusses each of the factors and asserts that all factors favor a finding of trademark infringement. The Court finds that the Conservancy's use of the mark NOKOTA in association with breed registration for ten years favors the finding that the NOKOTA mark is a strong mark. The Court also finds that there is a substantial similarity between the NOKOTA mark and the Association's use of an essentially identical mark or a dominant portion of the mark. The evidence suggests that consumers identified NOKOTA with the Conservancy as the provider of Nokota breed registration prior to 2004. See Docket No. 42-2. Both the Conservancy and the Association use the mark NOKOTA in their organizations' names. The Court finds that the Association's sale of breed registrations competes with the breed registry offered by the Conservancy. The Court also finds that the Association's use of the word "Nokota" coupled with

the fact it appears the products the Association is selling (breed registrations) tends to establish that the Association intends to draw customers who are interested in the Conservancy. Although "[a]ctual confusion is not essential to a finding of infringement," evidence of actual confusion was admitted through an email by an equine studies student. WSM, Inc. v. Hilton, 724 F.2d 1320, 1329 (8th Cir. 1984); see Docket No. 42-2. The Court finds it is likely the Association's actions have created some confusion. Finally, the Court finds it is unlikely that consumers can avoid confusion through the exercise of due care.

The Court finds that at this preliminary stage of the litigation, and based on the limited information in the record, the Conservancy has established a sufficient likelihood of success on the merits of its trademark infringement claim. The Court finds it is unnecessary to undertake an extensive review of the Conservancy's additional claims. Accordingly, the Court finds that this factor weighs in favor of the issuance of a temporary restraining order.

### B.    IRREPARABLE HARM

The Conservancy must next establish that there is a threat of irreparable harm if injunctive relief is not granted and that such harm is not compensable by money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007). "Possible or speculative harm is not enough." Id. The party that seeks the temporary restraining order must show a significant risk of harm exists. Irreparable harm exists, as a matter of law, where there is trademark infringement. Minn. Mining & Mfg. Co. v. Taylor, 21 F. Supp. 2d 1003, 1005 (D. Minn. 1998); see also General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987).

The Eighth Circuit has held that a threatened loss of goodwill is sufficient to constitute irreparable harm. Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003); see also General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [the movant] can demonstrate a likelihood of consumer confusion."). Also, other courts have concluded that the loss of an ongoing business cannot be fully compensated by subsequent monetary damages and "is not measurable entirely in monetary terms." Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970). Courts have similarly found irreparable harm where a party is threatened with the loss of a business and customer goodwill. See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37 (2d Cir. 1995); Ryko Mfg. Co. v. Eden Servs., 759 F.2d 671, 673 (8th Cir. 1985) (affirming district court's finding that irreparable harm was shown and injunction was warranted when distributor would be possibly forced out of business).

The Conservancy contends that it will suffer irreparable harm if the Defendants are allowed to continue to use the NOKOTA mark. The Association, the Robsons, and the Fjetlands contend that the Conservancy has not and will not suffer loss "other than as a result of [the Conservancy's] own doing." See Docket No. 44. The Association points to the fact that the mark NOKOTA has been a federal registered trademark since 2004, but the Conservancy waited until May 2009 to bring this action.

Bernhardt registered the mark NOKOTA in 2004 for horse breeding and stud services. In April 2009, the mark was transferred to the Association and is now being used for a breed registry. The Court finds, at this early stage, that the Conservancy has shown that it will suffer significant

10

harm to its organization if the Association, the Robsons, and the Fjetlands continue to use the NOKOTA mark. The Court further finds that at this preliminary stage of the litigation, the Conservancy has established that it will likely suffer irreparable harm if a temporary restraining order is not issued. Therefore, this factor weighs in favor of the issuance of a temporary restraining order.

### C.     BALANCE OF HARM

The Conservancy contends that it will suffer more hardship than the Association if an injunction is denied. The Conservancy contends that the Association will suffer little if any hardship if it is enjoined from continuing to use the NOKOTA mark. However, if the injunction is not granted, the Conservancy contends that it will have no control over the quality of the Association's breed registry and the Defendants will "immediately undermine decades of work by the Conservancy and its predecessors in saving, protecting, and preserving the original herd and offspring." The Court finds that the issuance of a temporary restraining order will not harm the Defendants as much as it will harm the Conservancy by not issuing the order. Thus, this factor weighs in favor of the issuance of a temporary restraining order.

### D.     PUBLIC INTEREST

The Conservancy contends that the protection of intellectual property and business investments is in the public interest. "The public interest weighs in favor of protecting intellectual property and protecting consumers from fraud in all forums." Nw. Airlines, Inc. v. Bauer, 467 F. Supp. 2d 957, 964 (D.N.D. 2006) (citing Green Prods. Co. v. Independence Corn By-Products Co.,

992 F. Supp. 1070, 1076-77 (N.D. Iowa 1997)).  Therefore, at this preliminary stage, the Court finds this factor weighs in favor of the issuance of a temporary restraining order.

## IV.  CONCLUSION

After carefully reviewing the entire record, the Court finds that the Plaintiff has met its burden of establishing the necessity of a temporary restraining order.  The Court **GRANTS** the Plaintiff's motion for temporary restraining order and will reserve ruling on the request for a preliminary injunction until after the show cause hearing.

Based on the foregoing findings and conclusions, it is **ORDERED**:

1) That the Defendant Nokota Horse Association, Inc., and any persons or entities acting in concert with or on behalf of the Association, including Defendants David Robson, Nola Robson, Robert Fjetland, and Deb Fjetland, shall be restrained and enjoined from registering or certifying, or offering to register or certify, any horse, including those sold at the roundup sale on October 23, 2009 in Dickinson, North Dakota, using the marks NOKOTA, NOKOTA HORSE ASSOCIATION, or any variation thereof that is confusingly similar to NOKOTA or NOKOTA HORSE CONSERVANCY.

2) That the Defendant Nokota Horse Association, Inc., and any persons or entities acting in concert with or on behalf of the Association, including Defendants David Robson, Nola Robson, Robert Fjetland, and Deb Fjetland, shall be restrained and enjoined from taking any action that would promote, advertise, or facilitate the registration or certification of horses, including

       those sold at the aforementioned roundup sale, using the marks NOKOTA, NOKOTA HORSE ASSOCIATION, or any variation thereof that is confusingly similar to NOKOTA or NOKOTA HORSE CONSERVANCY.

3)     That the Defendant Nokota Horse Association, Inc., and any persons or entities acting in concert with or on behalf of the Association, including Defendants David Robson, Nola Robson, Robert Fjetland, and Deb Fjetland, shall be restrained and enjoined from making any use of the marks NOKOTA, NOKOTA HORSE ASSOCIATION, or any variation thereof that is confusingly similar to NOKOTA or NOKOTA HORSE CONSERVANCY, in association with any promotion, advertisement, display, sale, offering for sale, printing, production, circulation, or distribution of any product or service associated with the aforementioned roundup and/or sale of horses.

4)     That the Defendants shall appear in Courtroom One of the U.S. District Court for the District of North Dakota, in Bismarck, North Dakota, on Thursday, October 29, 2009, at 1:30 p.m. to show cause under Rule 65 of the Federal Rules of Civil Procedure why they should not be restrained and preliminarily enjoined during the pendency of this action.

5)     That the Defendants may at any time file a motion to dissolve or modify this temporary restraining order in accordance with Rule 65 of the Federal Rules of Civil Procedure. If such a motion is not filed within ten (10) days after service of this order, the temporary restraining order shall be deemed

consented to based upon the grounds set forth above until further order of the Court.

6) No bond shall be required to be posted by the Plaintiff before the temporary restraining order is effective.

7) The Plaintiff shall arrange for the immediate service of this order, and shall promptly file proof of service with the Court.

Dated this 20th day of October, 2009.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court